UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PARISH OF ST. BERNARD THROUGH THE ST. BERNARD PARISH GOVERNMENT | CIVIL ACTION |
| VERSUS | NO. 11-2350 |
| LAFARGE NORTH AMERICA, INC., ET AL. | SECTION "K"(2) |

## ORDER AND REASONS

Before the Court are the following motions:

1) a Motion to Remand filed by plaintiff the Parish of St. Bernard ("the Parish") (Doc. 14) and

2) a Motion to Dismiss filed by Defendants Dennis Millon, Edward L. Busch and Jennifer Miller Arnold (Doc. 8) .

This case was filed in the Thirty-Fourth District Court for the Parish of St. Bernard on August 23, 2011, against Lafarge North America, Inc. ("Lafarge") and other defendants, including three employees of Lafarge. The Parish contends that as a result of the negligence of the defendants, a barge identified as ING 4727 ("the Barge") which was under the control of Lafarge and moored at its France Road facility located on the west side of the Industrial Canal in New Orleans struck the east floodwall of the Industrial Canal causing two catastrophic breaches which resulted in the inundation of the Lower Ninth Ward of Orleans Parish and a portion of St. Bernard Parish[1] on August 29, 2005 in the aftermath of Hurricane Katrina.

The three employees sued personally are Dennis Millon ("Millon"), the terminal manager of its France Road Facility; Edward L. Busch ("Busch"), the assistant terminal manager; and

---

[1] The allegation of the Barge having been the cause of the breaches of the Industrial Canal floodwall was the subject of a 13-day trial in the fall of 2010 brought by the same counsel representing the Parish herein. The Court found in written reasons that it was physically impossible for the Barge to have been the cause of these breaches. *In re Katrina Consolidated Canal Breaches (BARGE)*, 2011 WL 1792542 (Jan. 20, 2011).

Jennifer Miller Arnold ("Arnold"), the Area Safety Advisor for the River Region, Mid South Gulf Coast (collectively "Employee Defendants"). Defendants maintain that Millon and Busch who are Louisiana citizens have been improperly joined to defeat diversity jurisdiction which is one basis for federal jurisdiction alleged by defendants. Defendants also contend that this Court may exercise jurisdiction based on the Multiparty, Multiforum trial Jurisdictional Act of 2002 ("MMTJA") 28 U.S.C. § 1369(a). Finally, as a third basis for jurisdiction, they contend that there is federal question jurisdiction, 28 U.S.C. §1331 because of certain allegations of plaintiff that defendants violated certain United States Coast Guard regulations. Pretermitting the alternative bases, the Court will first consider the issue of improper joinder and whether a cause of action under Louisiana law actually lies against the employees of Lafarge.

**Standard of Review With Respect to Improper Joinder**

Pursuant to 28 U.S.C. § 1441(a), an action filed in state court may be removed to federal court if the action is one over which the federal court has subject matter jurisdiction. The burden of establishing jurisdiction is on the party seeking removal. *Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812, 815 (5th Cir.1993). In assessing whether removal is appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are of limited jurisdiction, that removal statutes should be strictly construed. *C.S. Gaidry, Inc. v. Union Oil Co. of Cal.*, 2009 WL 2765814 (E.D.La. Aug. 27, 2009) citing *Manguno v. Prudential Prop. & Ca. Ins. Co.,* 276 F.3d 720, 728 (5th Cir. 2002).

In the motion to remand, the non-movant carries a heavy burden in establishing fraudulent joinder and must demonstrate it by clear and convincing evidence. *Id.* at 814. In an *en*

*banc* decision, the Fifth Circuit departed from its use of the term "fraudulent joinder" and adopted the term "improper joinder," noting there is no substantive difference between the two terms. *Smallwood v. Illinois Central Railroad Co.,* 385 F.3d 568, 571, n. 1 (5th Cir.2004). The Court emphasized the purpose of the improper joinder inquiry is to determine the appropriateness of joinder, not the merits of the case. *Id.* at 574. There are two ways to establish improper joinder: " '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." ' *Id.* (citing *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003)). In the instant matter, the second method to establish improper joinder is before the Court. The appropriate test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood,* 385 F.3d at 573 ( *citing Travis,* 326 F.3d at 646-47). The Fifth Circuit in *Travis* further explained: "[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law." *Travis,* 326 F.3d at 647. This possibility that state law may impose liability, however, must be reasonable, not merely theoretical. *Id* at 648.

A district court may resolve improper joinder claims in two ways. The first is that a court may conduct a Rule 12(b)(6) type analysis, looking initially at the allegations of the complaint to determine whether the plaintiff has alleged a claim under state law against the in-state defendant. *Smallwood,* 385 F.3d at 573. The second way involves those cases in which a plaintiff has stated

3

a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. *Id.* In these cases, hopefully few in number, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Id.* The Fifth Circuit cautioned "that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant ... [a]ttempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits." *Id.* at 574-75. Furthermore, district courts should resolve all disputed questions of fact and substantive law in favor of the plaintiff. *Jackson v. Pneumatic Prod. Corp.,* 2001 WL 238214, at *1 (E.D.La.2001). Finally, "[i]f the right to remove is doubtful, the case should be remanded." *Sullivan v. Gen-Corp, Inc. .,* 1995 WL 321743, at *2 (E.D.La.1995) (Duval, J.)(quoting *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 939 (E.D.N.Y.1992)).

**Background**

Plaintiff alleges that during the week of August 26, 2005, Ingram Barge Company ("Ingram") had in transit from Lafarge's Joppa Illinois facility two 200 foot hopper barges, the Barge and another barge identified as ING 2745, containing oilfield cement bound for Westlake, Louisiana. The shipment was diverted to the France Road facility and delivered at about 11:25 a.m. on Friday, August 26, 2005 and docked there. (Petition ¶ 9).

On that same day, Hurricane Katrina was in the Gulf of Mexico and the National Hurricane Center Advisory 12 issued at 11:00 a.m. EDT projected a three day track which placed New Orleans within the potential strike zone of the hurricane with it forecasted to make landfall east of New Orleans on the Mississippi/Alabama Gulf Coast. By Advisory 14, issued at

5:00 p.m., it was predicted that Hurricane Katrina was to strike within 100 miles of New Orleans.  With Advisory 14, issued at 5:00 a.m. on Saturday morning, New Orleans was at the center of the cone with Hurricane Katrina projected to strike New Orleans sometime on Monday August 9,

 2005.  (Petition, ¶ 11).

  The Lafarge France Road facility was being renovated and lacked regular phone and fax lines, email and other forms of communications.  Despite the impending hurricane and news of its strength, the Parish contends that Lafarge took no action to keep its local employees informed of the worsening situation.  There was no monitoring of the weather situation at the facility.  As a consequence, the New Orleans waterside employees were allegedly not aware of the progress and strength of Hurricane Katrina as they worked on the morning of Saturday, August 27, 2005.  (Petition, ¶14).

  Even though Governor Blanco had proclaimed a state of emergency on August 26, 2005, Lafarge proceeded to unload the Barge on the morning of  August 27th.  This task was spearheaded by Busch acting as the assistant terminal manager in charge since Millon was on vacation. The other barge was not unloaded.  Three other employees who are not named defendants tied the Barge using "long" lines to allow the Barge to move with the anticipated rising water.  Eventually, the barges were flipped around resulting in the unloaded Barge being on the water side of the canal.   The Parish alleges a number of defalcations with respect to manner in which the Barge was secured including the failure to follow certain United States Coast Guard standards for mooring barges to each other in stormy weather. (Plaintiff, ¶ 18).

Specifically as to the non-diverse defendants, the Parish contends, *inter alia*, that Busch knew his methods to be "inadequate and contrary to the applicable standards of care, and along with the other Lafarge Defendants, were both unreasonable, negligent, reckless, wanton, and indifference in undertaking these acts and omissions." (Petition, ¶ 19). As to Millon, the Terminal Manager on vacation, the Parish contends, *inter alia*, that "he should and could have made contact with the Lafarge Defendants under the circumstances and undertaken reasonable measures to abate the danger posed by the" presence of the empty tied Barge. (Petition, ¶ 18).

Thus, the Parish contends that defendants, including non-diverse Busch and Millon, are liable for negligence, willful and wanton callous indifference, breach of third-party benefits and obligations and creation and/or maintenance of and/or failure to remedy unreasonably hazardous conditions. (Petition ¶ 43). Based on the alleged defalcations, the Parish seeks recompense for the damages to "a great quantity and number of parcels of immovable property, improvements and other assets and infrastructure" in St. Bernard caused by the flooding which it maintains was caused by the Barge's colliding with the flood wall at the Industrial Canal. No allegation for damages for personal injury is alleged; the suit is solely for property damage and/or economic loss.

**Analysis**

Considering the Motion to Remand, the pivotal inquiry then is whether a cause of action actually lies against Millon, the terminal manager and Busch, the assistant terminal manager, who are the two non-diverse parties to this matter. The answer to this question is found in the United States Court of Appeals for the Fifth Circuit's decision in *Kling Realty Co. v. Chevron*

*USA, Inc.*, 575 F.3d 510 (5th Cir. 2009). There, property owners brought an action in state court against an oil producer and two other non-diverse defendants, a well service company which was dismissed, and an individual, for contamination of their property in Iberia Parish, Louisiana. The case had been removed from state court and the issue was whether the denial of a motion to remand had been proper.

The appellate court first noted that the Louisiana Supreme Court's decision in *Canter v. Koehring*, 283 So.2d 716 (La. 1973), provides that "an employee could only be held personally liable for injuries to third persons where: (1) the employer owed a duty of care to the third person, breach of which caused the damage for which recovery is sought; (2) that duty was delegated by the employer to the defendant; (3) the defendant employee breached his duty through personal (not technical or vicarious) fault; and (4) the employee had a personal duty toward the injured third party, the breach of which specifically caused the third party's damages. *Kling*, 575 F.3d at 514 citing *Canter*, at 283 So.2d at 721.

The Fifth Circuit then relied on its decision in *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214 (5th Cir. 1986) wherein it found "that *Canter* liability to third persons for the negligence of corporate officers and employees may only be imposed for bodily injury claims." *Kling,* 575 F.3d at 515 citing *Unimobil*, 797 F.2d at 217. The *Kling* court stated, "Because the only injury alleged in Kling's petition is economic and emotional-damage to its property and various forms of mental distress–Kling/Walet would not have a basis for recovery against Martin under Louisiana law as it has been interpreted in this circuit." *Kling*, 575 F.3d 515-16. This analysis has continued to be employed, and the Louisiana Supreme Court has not addressed the issue squarely. *C.S. Gaidry, Inc. v. Union Oil Co. of Cal.*, 2009 WL 2765814 (E.D.La. Aug. 27, 2009).

7

As such, this Court is bound by the *Kling* decision. [I]n the absence of " 'a subsequent state court decision or statutory amendment which makes this Court's [prior] decision clearly wrong,'" we are bound by a prior panel's interpretation of state law " 'without regard to any alleged existing confusion in [that] state['s] law.' " *Id.* at 269 (quoting *Broussard v. Southern Pac. Transp. Co.,* 665 F.2d 1387, 1389 (5th Cir.1982) (en banc)). *American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.,* 352 F.3d 254, 271 (5th Cir. 2003). [2] Thus, finding that there is no reasonable basis for this court to predict that the plaintiff might be able to recover against these in-state defendants, Edwin Busch or Dennis Millon or Edward L. Busch, the Court finds that these defendants were improperly joined. Complete diversity exists among the remaining parties. Accordingly,

**IT IS ORDERED** that the Motion to Remand filed by plaintiff the Parish of St. Bernard ("the Parish") (Doc. 14) is **DENIED**.

Obviously, the same analysis is applicable to Jennifer Miller Arnold who was employed by Lafarge as the River Region, Mid South Gulf Coast, Area Safety Advisor. As such, no action would lie against her personally. Accordingly,

---

[2]Plaintiff cites to *Anderson & Broussard, LLP v. Bellsouth Corp.*, 2005 WL 2406156 (W.D.La. 2005); *Mitchell v. State Farm Life Ins. Co.*, 2006 WL 2331036 (W.D.La. 2006) contending that the bodily injury requirement as to *Canter* laiblity is without merit.  However, pretermitting any comment on the holdings in those cases and their applicability to the case at bar, *Kling* was decided in 2009 by the Fifth Circuit, and this Court must follow its edict. Likewise, the Louisiana Supreme Court's decision in *Marin v. Exxon Mobil Corp.*, 2009 WL 7004332 (La. App. 1st Cir. 2009), does not squarely address this issue and cannot overcome the requirement that this Court follow the Fifth Circuit's dictates.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendants Dennis Millon, Edward L. Busch and Jennifer Miller Arnold (Doc. 8) is **GRANTED**.

New Orleans, Louisiana, this 25th day of April, 2012.

*[signature]*

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**