**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

PARISH OF ST. BERNARD                                          CIVIL ACTION
THROUGH THE ST. BERNARD
PARISH GOVERNMENT

VERSUS                                                                  NO. 11-2350

LAFARGE NORTH AMERICA, INC., ET AL.                SECTION "K"(2)

<u>**ORDER**</u>

Before the Court are the following:

(1)    Lafarge North America Inc.'s Motion for Summary Judgment (Doc. 67);

(2)    Fed. R. Civ. P. 56(d) Motion to Stay or Continue Lafarge North America, Inc.'s Motion for Summary Judgment (Doc. 74) filed by the Parish of St. Bernard; and

(3)    Motion for Leave to Supplement the Record (Doc. 98) filed by the Parish of St. Bernard.

These motions are pending in the above-referenced matter brought by the Parish of St. Bernard ("St. Bernard") against Lafarge North American, Inc.  ( "Lafarge").  St. Bernard contends that Lafarge's allegedly inappropriate handling of Barge ING 4727 ( "the Barge")  was a substantial cause of the north and south breaches of the eastern flood walls along the Inner-Harbor Navigation Canal ("IHNC") which resulted in the inundation of parts of St. Bernard with the passage of Hurricane Katrina over the area.  Based on the reasons that follow, the Court finds that Lafarge's Motion for Summary Judgment has merit and that there is no justifiable reason to delay the entry of summary judgment in its favor.

**Procedural Background**

The issue of whether the Barge caused the breaches of the floodwall on the eastern bank of the IHNC  has been pending in this Court for more than seven years. As this Court has previously discussed, in the aftermath of the levee breaches and inundation of New Orleans and the surrounding area,  the judges of the United States District Court for the Eastern District of the United States created an umbrella litigation known as *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182.  Its purpose has been to facilitate and expedite the crucial discovery required to swiftly litigate those matters concerning liability, insurance coverage, and the like that arose thereafter.  To accomplish that task, certain categories of cases were created and tracks established to resolve in a timely, cost-efficient manner the resulting litigation.

A driving motivation  for the creation of the umbrella  was the need for joint discovery to be managed in a cost-effective fashion in order to avoid the inefficiencies arising from multiple rounds of discovery .  See Case Management Order No. 4   (C. A. No. 05-4182, Doc. 3299 dated March 1, 2004); Case Management Order No. 5.  (C.A. No. 05-4182, Doc.  7724 dated September 18, 2007); and *In re Katrina Canal Breaches Consolidated Litigation,* 2012 WL 956494, *1-3 (E.D. La. March 20, 2012).   Thus, a mechanism was created and implemented to streamline discovery with respect to the catastrophic failure of the floodwalls and levees surrounding the metropolitan area of  New Orleans including property in St. Bernard Parish.

One of the categories created was the BARGE category which consolidated all of the cases filed where the primary alleged mechanism of failures of the eastbank IHNC floodwall were the two alleged allisions of the Barge with the floodwall causing the North and South

Breaches.  There was a motion filed for the certification of a class with respect to this category

of plaintiff.   On May 21, 2009, the Court denied the Barge Plaintiffs' Amended Motion for

Class Certification (C.A. No. 05-4182, Doc. 18852).  Eventually, by stipulation, certain parties

agreed to an exemplar non-jury trial with respect to the BARGE cases,  and new deadlines were

established for that trial on July 27, 2009.  St. Bernard was a named plaintiff in that trial.

Eventually, certain parties entered into the Katrina Litigation Tolling Agreement

("Tolling Agreement"), effective as of February 24, 2010.  One of its stated purposes was "to

facilitate the resolution of the various claims now pending or proposed, without unnecessary

additional litigation, by permitting the Parties to be informed by the results of trial proceedings

involving certain individual test cases."  The parties further agreed that they would use their best

efforts to effectuate that purpose in good faith.  (Doc. 6702, p. 3 of 6, ¶ 12).  In addition, in the

event of future litigation involving any of the signatories to the Tolling Agreement, the parties

agreed that the discovery record in the test cases would be part of the record for the purpose of

avoiding discovery that would be cumulative or duplicative.  In addition, it was agreed that the

Tolling Agreement did not constitute any waiver of rights to challenge evidence from the

discovery record and that it was not an agreement to permit res judicata or estoppel, or law of the

case to result from evidence from the discovery record of the test cases.  (Doc. 6702, p. 3 of 6, ¶

13).  St. Bernard became a participating entity with respect to the Tolling Agreement on March

4, 2010 and a substantial beneficiary of its tolling procedures since its cause of action, without

the tolling provisions,  would have meant this case would have been prescribed when it was

filed.

The exemplar non-jury BARGE trial commenced on June 21, 2010.  This extensive, three-week, non-jury trial concerned the  negligence claims brought in two of the then pending suits by four specific plaintiffs[1] as stipulated by those named plaintiffs against Lafarge.

The Court issued a forty-two page opinion in which it found that based on the evidence and testimony, the plaintiffs' allegations were refuted by the laws of nature considering the undisputed physical evidence adduced as to the weather conditions in the area during Hurricane Katrina. *In re Katrina Canal Breaches Consol. Litig.,* 2011 WL 1792542 (E.D.La. Jan. 20, 2011) (also referred to as "Findings of Fact and Conclusions of Law").  In addition, irrefutable physical evidence consisting of photographs of the wave action in the Industrial Canal during Hurricane Katrina likewise demonstrated that plaintiffs' allegations were unfounded.  Finally, there were two pictures which the Court found to be dispositive in disproving plaintiffs' theory of the case.

The first was a picture of the Barge laying on top of telephone wires  with an undisturbed school bus at its side. (See  Appendix A, Figure No. 118 attached hereto).   The Court found that this picture demonstrated beyond cavil that the Barge floated over the floodwall **after** the floodwall had been compromised.  The second definitive picture had been taken after the peak of the surge while the outflow of  water was occurring into the Industrial Canal from the Lower Ninth Ward post-Katrina.  (See Appendix B).  That captured image showed the Barge had floated over the submerged schoolbus and had come to its resting place without damaging the bus in any manner.  To be clear, the bus in that image was still under water and the Barge was in a position that required it to have floated over that schoolbus.   This irrefutable physical evidence

---

[1]C.A. No. 05-5724:Josephine Richardson, Holiday Jewelers, Inc. and C.A. No. 06-7516: John Alford and Jerry Alford.  These suits were consolidated under the BARGE umbrella in the *In re Katrina Consolidated Canal Breach Litigation,* C.A. No. 05-4182. There are numerous other plaintiffs in each case.

showed unequivocally that an enormous amount of the water had had to precede the Barge

entering  into the Lower Ninth Ward; otherwise, there would be no way for the school bus to

have remained unscathed as it was. (See Appendix A, attached hereto).

To that end, the Court wrote:

> As stated by Dr. Bea in commenting on the significance of the image
> found at  RB-063 in DX-361 [Appendix B *infra*] which image was captured at
> trial and marked as DX- 360 with a red dot over the spot where the submerged
> school bus rests with the Barge resting to the left or east of it still fully
> submerged:
>> Well, I was always concerned about how the barge could
>> get to its final resting position with that school bus in the way.  It
>> indicated clearly to me that the water level inside the Lower Ninth
>> Ward was very deep, and that the barge had been able to float over
>> the top of that school bus, hence, explaining how it could appear
>> where it did relative to the barge after the waters had receded.
> (Transcript, Bea at 2685) (Appendix No. 15, DX-360).
> Thus, for all the reasons stated above, the Court finds that the ING 4727 caused neither or
> the South Breach of the IHNC floodwalls, nor the catastrophic flooding caused thereby for which
> plaintiffs seek damages.  The flooding began around 7:00 a.m. at the South Breach and the area
> was so flooded by the time the Barge exited the IHNC around 10:00 a.m. that it floated over a
> bus and telephone wires.  Simply put, the Barge was a consequence not a cause.

*In re Katrina Canal Breaches Consolidated Litigation*, 2011 WL1792542 (E.D.La. January 20,

2011). No appeal was ever taken from these findings.

After the BARGE matter had been tried and the Court in written reasons found that it was

physically impossible for the Barge to have caused the breaches of the floodwall as alleged, on

August 23, 2011, the subject St. Bernard case was filed in the 34th Civil District Court for the

Parish of St. Bernard. In the state court proceedings, St. Bernard sued three of Lafarge's

employees, two of whom were Louisiana residents.   Millon and Busch who are Louisiana

citizens have been improperly joined to defeat diversity jurisdiction.  The instant St. Bernard

case was removed to federal court on September 20, 2011.

A Motion to Dismiss (Doc.8)  was filed by the defendant employees on September 27, 2011 and a  Motion to Remand was filed by St. Bernard on October 20, 2011. (Doc. 14). Briefing on these motions continued through December of 2011.  On April 25, 2012, the Court issued its Order and Reasons finding that St. Bernard had improperly joined the three employees, denying the Motion to Remand and granting the Motion to Dismiss. (Doc. 60)

Around the same time, on March 20, 2012, Lafarge filed a Motion for Summary Judgment as to all of the remaining cases in the BARGE category of the *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182.  The Court issued another lengthy opinion finding that the evidence adduced at the Barge exemplar trial could be used in the context of a motion for summary judgment and that the physical evidence including prevailing wind direction, wave direction, and physical evidence outlined above required that the motion for summary judgment be granted.  In closing, the Court stated unequivocally, "The instant decision is not based on credibility; it is based on the fact that the Barge could not be propelled in the manner alleged given the irrefutable valid scientific and physical evidence presented unless the Barge sprouted wings and could fly against a 70 mile per hour wind."  *In re Katrina Canal Breaches Consolidated Litigation,* 2012 WL 956494, *7 (E.D.La. March 20, 2012).

 Lafarge filed the instant  Motion for Summary Judgment on July 5, 2012, and St. Bernard responded with its Motion to Stay or Continue on August 10, 2012.  In essence, St. Bernard maintains that the motion for summary judgment was filed prematurely and that it is entitled to sufficient time to engage in additional discovery pursuant to Fed. R. Civ. P. 56(d).  In particular, St. Bernard as part of its motion to continue or stay presented the affidavit of its expert, Dr. Saswati Datta, in which she stated that she could complete her analysis within 90days

of August 10, 2012, (early November) or as early as the end of September, 2012. (Doc. 74-4, at page 12 of 17, ¶ 39).  In reality, as a result of a number of consent motions to continue filed by St. Bernard, briefing was not completed by the parties until September 24, 2012, at which time the Court was embroiled with the non-jury trial of *Armstrong v. United States, et al.*, C.A. No. 10-866, which again concerned the breaches of the same floodwall where the mechanism of failure is alleged to be certain remediation activities undertaken by the United States Army Corps of Engineers and its contractor Washington Group International, Inc.  on the water side of the floodwalls.

Then, on November 24, 2012, a Motion for Leave to Supplement the Record (Doc. 98) was filed by St. Bernard.  The Court is now asked to suspend its consideration of this motion because the "additional proof" to be provided by Dr. Datta and her colleagues can not be made available until sometime in January 2012, which date is within the Court's February 19, 2013 deadline for Plaintiff's Expert Disclosure.  This case is scheduled for trial on May 16, 2013. With this as background, the Court will take up the pending motions.


**Standard for Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v.*

*Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.   The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."   *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

   "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

   Indeed, plaintiff must show a "genuine issue" of material fact, not just a factual dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007) (when opposing parties tell two different stories, **one of which is blatantly contradicted by the record, so that no reasonable jury could believe it**, a court should not adopt that version for purposes of ruling.) (emphasis added); *Little v. Liquid*

*Air Corp,* 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc) (summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant).  Indeed, a trial judge may not permit a jury to accept testimony that is contrary to a law of nature.  *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

Thus, evidence manifestly at variance with the laws of nature and the physical facts is of no probative value and may not support a jury verdict.  *Ralston Purina Co. v. Hobson*, 554 F.2d 725, 729 (5th Cir. 1977) (what Hobson says his chickens did, chickens do not do).  Likewise, equivocal or vague testimony cannot be relied on to overcome summary judgment.  *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 271-72 (5th Cir. 2002); *Kampen v. Am. Isuzu Motors, Inc.* 157 F.3d 306, 308 (5th Cir. 1998) (en banc) (expert testimony consisting of "conclusory, unsupported assertions" does not create genuine issue).  Indeed, unsubstantiated interpretation of its own evidence will not support the denial of a motion for summary judgment.  *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753-54 (5th Cir. 2000) (affirming summary judgment, finding that inference of causation did not follow from plaintiff's expert evidence).

In addition, the Court may use trial testimony from the prior trial in support of this motion as it is functionally the equivalent of an affidavit, which is not subject to cross-examination and which is contemplated under Rule 56(c)(1)(A).  *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1415 n. 12 (5th Cir. 1993) (It is well-settled that a certified transcript of a judicial proceeding may be considered on a motion for summary judgment).  *See Randolph v. Laeisz*, 896 F.2d 964 (5th Cir. 1990) (considering– without discussion–the testimony given during the trial of the main action on a motion for summary judgment in a severed action); *Beiswenger Enterprises Corp. v. Carletta*, 46 F. Supp.2d 1297, 1299 (M.D.Fla. 1999) (trial testimony, even when from a

proceeding in which the parties, subject matter, and counsel are not the same can be used

because it is sworn testimony which is at least as reliable as that found in affidavits citing

*Langston v. Johnson*, 478 F.2d 915, 917 n. 17 (D.C. Cir. 1973)).   With this template, the Court

will now analyze the subject motions.


**Analysis**

Lafarge contends that there are multiple independent data sources which confirm that the

hurricane winds prevented the Barge from being present at either breach.  For this proposition, it

cites to the Court's Findings of Fact and Conclusions of Law from the BARGE exemplar trial, *In

re Katrina Canal Breaches Consol. Litig.,* 2011 WL 1792542 (E.D.La. Jan. 20, 2011).  To that

end, those findings as to wind direction were not based on credibility calls.  Those findings were

the result of measurements taken during the storm and scientific calculations extrapolated from

various gauge readings as well as the laws of nature.  Those findings include:

> \*    Buys Ballot's Law demonstrates that the prevailing wind direction in the
> northern hemisphere caused by a  hurricane is counter-clockwise in direction.
> Based on the track of the storm, the winds at the IHNC at the time of the North
> and South Breaches (4:00 a.m. to 7:45  a.m.) blew in a northeasterly direction.
>
> Since the Lafarge Terminal lies on the west bank of the IHNC, these winds would
> have pushed the Barge towards the west and away from the east bank where the
> breaches occurred.
>
> \*    Even if the Barge had come loose as some eyewitnesses testified by Sunday and
> was at the southern end of the IHNC between the Claiborne and Florida bridges,
> these winds would prevent the Barge from traveling in a northerly direction.  Data
> from the Oceanweather Inc.'s hindcasts demonstrated that the hurricane winds at
> the IHNC blew from the northeast at all times prior to 7:42 a.m.
>
> \*    Data taken from Lakefront Airport, four miles from the IHNC location verified
> the that winds blew from the northeast between 3:00 a.m. and 7:53 a.m.

      \*       Team Louisiana also concluded that the wind at the IHNC came from the northeast until no earlier than 8:30 a.m. or 9:00 a.m. making it impossible for the Barge to be traveling in an easterly direction prior to that time.

      \*       The North Breach occurred no later than 6:00 a.m. and the South Breach occurred at approximately 7:00 a.m.

      \*       The unrefuted testimony and pictorial evidence was that the waves moved in a southerly direction and were between a foot to two feet.

In addition, with respect to the contention that the Barge had broken loose from its moorings on Sunday, the Court found that the physical evidence rendered ludicrous the contention that a barge could have been propelled by microbursts such that the two breaches would have been caused by the Barge.  In its Findings of Fact and Conclusions of Law, this Court specifically stated:

> In essence, in order for Plaintiffs to prevail they must prove by a preponderance of the evidence that the Barge somehow navigated across the canal against sustained winds to cause the North and then the South Breach.  This would require a highly anomalous weather or tidal event such as a series of microbursts or a 20-foot tidal wave.  These anomalies did not occur.
>
> As such, even if the Barge had been loose, which this Court finds not to have occurred, there is no possible way for a Barge without motor power to travel north from close to the Claiborne Bridge along the canal to near the Florida Avenue Bridge with the wind blowing from the north.  Plaintiffs' contentions belie physics and common sense.  This conclusion is further confirmed by the wind data obtained from the Lakefront airport.  Looking at the information recorded from 3:00 a.m. to 7:53 a.m., the wind direction is in line with the hindcast models.   The Lakefront Airport is about 4.1 to 4.2 miles north of the IHNC.  While there is more oscillation in the Lakefront wind records, the difference can be accounted for by virtue of discrete increments of time used there which were "snapshots" in time whereas the hindcast values  were averages over a period of time.  Nonetheless, the evidence is overwhelming that the wind could not have moved the Barge northward either from the southern location posited by Mrs. LeBlanc and Mr. Tompkins or from the Lafarge terminal which is also south of the north breach.  There is no credible evidence which contradicts this finding.

Findings of Fact and Conclusions of Law at \* 9.  As such and for all of the reasons as stated in the Court's previous opinions on this issue of the Barge and causation found at *In re Katrina*

*Canal Breaches Consol. Litig.,* 2011 WL 1792542 (E.D.La. Jan. 20, 2011) and *In re Katrina Canal Breaches Consolidated Litigation,* 2012 WL 956494,  (E.D. La. March 20, 2012), which the Court herein reiterates and incorporates as if set-forth in full, the Court finds that based on the record before it, there is ample evidence for the entry of summary judgment in favor of Lafarge.

Thus, the sole question before the Court is whether plaintiff has met the requirements of Fed. R. Civ. P. 56(d)[2] to obtain the postponement of a definitive ruling on Lafarge's motion.  In order to meet that standard St. Bernard must demonstrate why it needs additional discovery and **how the additional discovery will create a genuine issue of material fact**.  *Coleman v. Omega Protein, Inc.,* 2011 WL 976543 (E.D.La. March 15, 2011)(Fallon, J.) (emphasis added) citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993).  "If it appears that further discovery will not produce evidence creating a genuine issue of material fact, the district court may, in the exercise of its discretion, grant summary judgment."  *Krim*, 989 F.2d at 1442 citing *Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir. 1989).

---

[2]Rule 56(d) provides that "[i]f a non-movant shows by affidavit or declaration that for specified reasons, it cannot present facts essential to justify its opposition, the court may defer considering the motion or deny it." While the rule states that an affidavit or declaration is required, the Fifth Circuit only requires "some equivalent statement" thus any argument that the formalistic requirements of the rule have not been met here is without merit. *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1266-67 (5th Cir. 1991).

Judge Fallon further noted in *Coleman*:

> As the Fifth Circuit has explained, the fact "that more time [is] scheduled for discovery does not, by itself, defeat summary judgment." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir. 1994); *accord Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990)(noting that the rule "may not be invoked by the mere assertion that discovery is incomplete).

*Colemen*, 2011 WL 976543 at *3. Moreover, where ample time and opportunities for discovery have occurred, the party seeking relief under Rule 56(d) must show that it has been diligent in performing discovery. *Id.* citing *Securities and Exchange Commission v. Spence & Green*, 612 F.2d 896, 901 (5th Cir. 1980).

To that end, plaintiff in its Memorandum of Law in Support of Cross-Motion Pursuant to Rule 56(d) and in Opposition to the Lafarge North America Inc.'s Motion for Summary Judgment (Doc. 79) argues that there were six months remaining for discovery when the motion was filed and as such the motion was premature. As noted above, that argument is without merit standing alone.

As additional and more specific support for the granting of a Rule 56(d) continuance or stay,  plaintiff's counsel avers that he requires more time in order to:

(1)     seek to discover through Requests of Production and deposition of Lafarge's agents and/or employees the contents and nature of Lafarge terminal surveillance or other video at time pertinent to the issue of the Barge's movements.

(2)     seek to identify and depose the owner of the school bus to determine where it was parked before the storm, its movements during or between Katrina and/or Rita and thereby prove that Dr. Bea's consideration of the school bus is immaterial;

(3)     seek to conduct non-party discovery concerning the power line and issues of

power loss as to that power line and the knowledge on the part of Entergy

concerning the timing or cause of damage or impairment of this power line.

(4)     seek to conduct discovery concerning scrape marks appearing on the canal side of

the eastern floodwall and prove that the marks in question "are as tall as a man

standing next to the floodwall" and are inconsistent with the contention that it was

caused by the lawnmower; rather that such scrape marks were caused by the

Barge.

(5)     seek to present expert opinion presented by Diswadev Roy, Ph.D., Saswati Datta,

Ph.D., Billy Edge, Ph.D., Ruey Hung Chen, and others who "are in the process of

determining the barge's movement within the canal at time pertinent to the issues

subject of Lafarge's motion."  Plaintiff contends that the experts:

> are conducting scientific studies of wind and water
> and will opine when their studies are concluded as
> to how the barge traveled within the canal.  It is
> expected that the results will ***prove that the barge***
> ***moved to and caused the North and South***
> ***Breaches of the eastern Industrial Canal floodwall***
> ***on Monday, August 29, 2005.***

(6)     seek to depose all of Lafarge's experts concerning plaintiff's experts theories as to

why Lafarge's experts are incorrect.


As to the surveillance video, this request was made in the original BARGE litigation

discovery and Lafarge has responded that there is no such footage.  There is no reason to suspect

that Lafarge lied in this instance in its previous responses or that any new materials would be

discovered this many years later.  In addition, the Court findings took into consideration the proposition that the Barge had become unmoored as St. Bernard contends, and it found that regardless, because of the winds and the currents, the Barge could not have gotten to the north of the canal against 70 mile an hour north winds.  This argument is meritless.

As to the school bus discovery, this request borders on the absurd.  Furthermore, as noted, it is December; these motions and the possibility of summary judgment has been looming since September.  Certainly, plaintiff's counsel could have obtained this "valuable" information by now.  The Court finds that this fits within the category of St. Bernard not having acted diligently.

Furthermore, regardless of where the bus was parked or any other logistical issue, the picture attached hereto as Appendix B is irrefutable proof that the Barge floated over the bus. The same analysis holds true for the third-party power line discovery.

As to the scrape marks, St. Bernard's contention that these marks were made by the Barge are patently absurd.  There are innumerable pictures that the Court saw that are part of the self-same discovery record which is admissible particularly in light of the Tolling Agreement that demonstrate without question that those "scrape marks" pre-existed Hurricane Katrina and the Barge's alleged allisions.

Finally, the Court has reviewed the Declarations of Drs. Datta and Roy.  In essence these declarations are wholesale criticisms of Lafarge's experts methodology.  Assuming that the Barge had come unmoored and had drifted to the south of the IHNC by the Claiborne Bridge by Sunday evening, these experts do not give any plausible explanation as to how they can prove that "localized" winds would act in such a way as to cause the Barge to move against the

15

prevailing winds and tides in any plausible way.  For example, no analogous examples where such a phenomenon has been proved by Dr. Datta's methods was provided.

For instance, Dr. Datta opines that Dr. Dooley's reliance and use of Buys Ballot's Law is "completely improper"and  patently absurd.  (Doc. 79-2, ¶16).  She states "For judging the wind directions in a prevailing hurricane system *for a given location and time* using the Buys Ballots law is out of scale; immaterial, and at strict odds with our methodology currently in progress." Nonetheless she does not provide a single example of where her methodology has actually explained any kind of analogous phenomenon.

Moreover, she opines as to all of the studies that are being undertaken and states with incredible certitude, with absolutely no basis that this Court can find, that these tests will prove that localized winds overcame the generalized winds so as to push the Barge north and then south in the course of a few hours against the tides and the wave action in the canal.   For instance Dr. Roy is doing a hydrodynamic analysis "to find out, given the environmental condition how was it possible for the barge to float to where it was found on the SAR image" and "where did it go from where it was located on the SAR image leading up to the time of the south breach."  His "opinion" is based on testimony that belies the physical evidence as outlined in detail before.  Indeed, confirmational bias seems to be at play in this instance.

But more importantly, and as noted early on, it was promised that the expert materials would be presented to the Court within 90 day of August 10, 2012–early November.  It is now early December, and a Motion for Leave to Supplement the Record was filed on November 24, 2012.  In that filing, the Court is informed that "due to the absence of some critical components of the study" Dr. Datta's and her colleagues' conclusions establishing the forces affecting and

16

describing the barges path have not been completed.   No preliminary findings, no hint as what any of the tests might have preliminarily proved have been provided.

Lafarge has been the subject of this inquiry for more than seven years.  St. Bernard has had years to find and prove its theories.  Indeed, once class certification was denied on May 21, 2009, St. Bernard was aware that it would in all likelihood have to file its own suit to recover for its own damages.  It entered into a Tolling Agreement that indeed protected it from any prescription argument considering that Hurricane Katrina hit on August 29, 2005.  The kind of "discovery" and expert testimony sought is not dependent in any way on discovery to be gotten from Lafarge.  It is satellite imagery driven and is material that has been available to these experts from the get-go.

St. Bernard filed the subject suit on August 23, 2011.  Regardless of which defendants and where the case was to be tried, it knew what had to be proven.  It has been 16 more months; St. Bernard still does not have an expert report that outlines any fact or equation that allows this Court to find that its previous findings are incorrect and irrebutable.  Instead, the Court has affidavits containing vituperative diatribe as to the Lafarge experts' failures and promises that their superior methods will show something different.

The Court finds that in light of the foregoing, St. Bernard has not been diligent in pursuing discovery.  That is most clear with respect to all of the "discovery" outlined above as to Points 1 through 4.  Furthermore, as to the experts' opinions, the Court has been provided nothing that gives it confidence that the results of this exercise will not be tainted by overwhelming confirmational bias.

17

The time has come for judicial economy to end this exercise in futility.  The picture at Appendix B cannot be gainsaid.  Indeed, a picture here is worth a thousand words. The physical evidence as this Court has found twice leads inexorably to the conclusion that Lafarge is entitled to summary judgment and an end to this litigation.  Accordingly,

**IT IS ORDERED** that Lafarge North America Inc.'s Motion for Summary Judgment (Doc. 67) is **GRANTED** and judgment shall be entered in favor of  Lafarge North America Inc. and against the Parish of St. Bernard dismissing its claims with prejudice with plaintiff to bear all costs.

**IT IS FURTHER ORDERED** that the Fed. R. Civ. P. 56(d) Motion to Stay or Continue Lafarge North America, Inc.'s Motion for Summary Judgment (Doc. 74) filed by the Parish of St. Bernard is **DENIED**.

**IT IS FURTHER ORDERED** that Motion for Leave to Supplement the Record (Doc. 98) filed by the Parish of St. Bernard is **DENIED**.

New Orleans, Louisiana, this ___6th___ day of December, 2012.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

18

# APPENDIX

Appendix A–Prior Appendix 14
Photographs demonstrating catastrophic flooding prior to Barge impact on IHNC.
DX-196 Figure 116 at 171 and Figure 118 at 172



Figure 116: The barge in its post-Katrina resting place.  The homes and trees would have prevented the barge from floating from the right side of this photo to its position on the left side of the photo, which is nearer to the canal.

9. The presence, location and condition of trees, telephone pole and wires indicates the barge reached its grounding spot during the flood and not during the draining of the water from the Lower Ninth Ward.



Figure 118: The barge adjacent to a semi-standing house (1739 Jourdan Ave.), which indicated the barge did not impact the house very hard.

Appendix B– Prior Appendix No. 15"– (DX-360)

