**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ST. BERNARD PARISH | CIVIL ACTION |
| VERSUS | NO. 11-2350 |
| LAFARGE NORTH AMERICA, ET AL. | SECTION "B"(2) |

**ORDER AND REASONS**

Before the Court is Defendant, LaFarge North America Inc.'s Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings concerning Plaintiff's demand for tax damages.[1] Plaintiff, Parish of St. Bernard, has filed an opposition.[2] Defendant has filed a reply.[3] Accordingly, and for the reasons enumerated below, **IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings is **GRANTED** and Plaintiff's claim for "impairment and/or loss of tax base(s) and consequent loss of tax revenue" is hereby **DISMISSED** with prejudice.

**I.   FACTUAL AND PROCEDURAL BACKGROUND AND CONTENTIONS**

The Parish of St. Bernard ("Parish") alleges that a barge improperly moored at LaFarge North America, Incorporated ("Lafarge") facility broke free during Hurricane Katrina and caused two breaches in the Industrial Canal resulting in extensive flooding and damage to the Parish.

---

[1] Rec. Doc. No. 139.
[2] Rec. Doc. No. 145.
[3] Rec. Doc. No. 150.

1

Following Hurricane Katrina, several lawsuits were filed alleging that a barge, the ING 4727, which was improperly moored at a facility owned by Lafarge, broke free and allided with the floodwall of the Industrial Canal breaching it in two places. The suits also allege that extensive flooding resulted, causing damage to numerous parties. These cases were consolidated as the Barge Litigation Track in In re Katrina Canal Breaches Consolidated Litigation, USDC EDLA No. 05-4182. Following denial of class certification, four named plaintiffs were selected to try their cases in a exemplar bench trial, which took place in 2010. After the trial, the district court issued a ruling in January 2012, concluding that the barge could not have caused the breaches and dismissed the claims by the four exemplar plaintiffs. Lafarge then moved for summary judgment as to all remaining named plaintiffs, which motion was granted.

The Parish was not a party in the cases that were consolidated in the Barge Litigation Track. After the district court denied class certification, the Parish and other claimants who were not yet plaintiffs entered into a Tolling Agreement with Lafarge that suspended the statute of limitations pending completion of the test case trial proceedings.

In August of 2011, following the district court's dismissal of the claims of the four exemplar plaintiffs, the Parish filed

suit against Lafarge in Louisiana state court. Lafarge timely removed the case to federal court in September 2011. The district court subsequently granted Lafarge's motion for summary judgment pursuant to Fed. R. Civ. P. 56. On appeal, the U.S. Fifth Circuit Court of Appeals reversed, concluding that questions of fact precluded summary judgment.[4] The matter was remanded to the U.S. District Court for the Eastern District of Louisiana, and transferred to this Section.[5]

Lafarge contends that, under maritime law, which governs the Parish's claims, a plaintiff claiming negligence may not recover economic damages that do not stem from physical damage to the plaintiff's own property. Thus, any diminished tax base and resulting loss of tax revenue after Katrina resulted from damage to property owned by others— Parish residents and businesses— who were dislocated by the storm. The Parish therefore cannot recover tax damages in this action under a long-established tenet of federal maritime law established in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). *Robins Dry Dock* disallows purely economic damages that are caused by negligence without some physical damage to person or property.

---

[4] Rec. Doc. No. 112.
[5] Rec. Doc. No. 114.

The Parish contends that it seeks to recover for economic losses arising from damage to Parish-owned property, which damage was caused by Defendant. This property damage, in turn, disabled the Parish from providing governmental services and protection, leaving its absent population no choice but to delay its return and the resumption of tax-revenue generating commerce and residency.  The property damage alleged includes: water and sewage systems, streets, parks, utilities, health care systems and facilities, Fire Departments, Public works Department, Transit Department, Community Development Department, etc.[6]

**II.   LAW AND ANALYSYS**

    a. <u>Standard of Law: Rule 12(c) Motion for Judgment on the Pleadings</u>

The standard for deciding a Rule 12(c) motion for judgment on the pleadings is the same as a Rule 12(b)(6) motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Id. (internal quotations omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). "Factual

---

[6] Rec. Doc. No. 145 at 3.

4

allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. "The court may grant judgment on the pleadings ... where it is beyond doubt that the nonmovant can prove no set of facts in supports of his claim that would entitle him to relief...." *Caletka v. State Farm Mut. Auto. Ins. Co*., 936 F.Supp. 380, 381 (W.D. La. 1996).

### b. General Maritime Tort Doctrine: *Robins Dry Dock*

Under general maritime tort doctrine, recovery is barred for economic loss in the absence of physical harm. In *Robins Dry Dock*, the leading "pure financial injury" case, a time charterer sued to recover profits lost when the defendant dry dock negligently damaged the vessel's propeller. 275 U.S. at 309. The charterer sued for its loss of the use of the vessel during the ensuing two week delay. *Id*. The U.S. Supreme Court denied recovery, holding that the charterer's loss arose only as a result of the loss benefit of the contract and that the plaintiff had no protected interest in the vessel itself. Justice Holmes, writing for the Court, stated:

> As a general rule...a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong.... The law does not spread its protection so far.

*Id.*

Most courts, including the U.S. Fifth Circuit Court of Appeals have read Robins Dry Dock to establish a bright line rule against recovery for economic loss, caused by an unintentional maritime tort absent physical damage to property. *See e.g. State of Louisiana v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985)(en banc); *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271 (1986); *Getty Refining & Marketing Co. v. MT Fadi B*, 766 F.2d 829 (3rd Cir. 1985). These courts have "discarded traditional tort precepts of foreseeability and lack of remoteness in this limited class of cases." *Getty*, 766 F.2d at 832.

Three cases cited by Justice Holmes in *Robins* deserve examination because they show the historical underpinnings of the *Robins* rule: *Elliott Steam Tug Co. v. The Shipping Controller,* [1922] 1 K.B. 127; *Byrd v. English,* 117 Ga. 192, 43 S.E. 419 (1903); *The Federal No. 2,* 21 F.2d 313 (2d Cir. 1927). In *Elliott Steam Tug,* the British admiralty, under wartime legislative powers, requisitioned a tug. A charterer of the tug lost profits because of the requisitioning. In applying an indemnity statute that authorized recovery, the court noted that the charterer could not have recovered at common law, stating: "The charterer in collision cases does not recover profits, not because the loss of profits during repairs is not the direct

6

consequence of the wrong, but because the consumer law rightly or wrongly does not authorize him as able to sue for such an injury to his mere contractual rights." 1 K.B. at 140. In *Byrd v. English,* the defendant negligently damaged a utility's electrical conduits, thus cutting off power to the plaintiff's printing plant. The plaintiff sued for lost profits because of loss of power, and the court denied recovery. Finally, in *The Federal No. 2,* the defendant tug negligently injured plaintiff's employee while he was working on a barge. The employer sued to recover sums paid to the employee in maintenance and cure. The court denied recovery and explained: "It is too indirect to insist that this may be recovered, where there is neither the natural right nor a legal relationship between the appellant and the tug, even though the alleged right of action be based upon negligence." 21 F.2d at 314.

The bright line approach is a pragmatic approach intended to avoid a "chain reaction" of economic injuries that "may produce an unending sequence of financial effects best dealt with by insurance, or by contract, or by other business planning devices." *Id.* at 832; *TESTBANK*, 752 F.2d at 1023. The "critical factor in the application of the Robins holding...[is] 'the character of the interest harmed'." *Vicksburg Towing v. Mississippi Marine Transport*, 609 F.2d 176, 177 (5th Cir. 1980)

(quoting *Dick Meyers Towing Service, Inc. v. United States*, 577 F.2d 1023, 1025 (5th Cir. 1978)).

Since *Testbank,* the Fifth Circuit has consistently applied the rule limiting recovery in maritime cases to plaintiffs who sustain physical damage to a proprietary interest. *See, e.g., Catalyst Old River Hyrdroelectric Ltd. Partnership v. Ingram Barge Co.,* 639 F.3d 207, 210 (5th Cir. 2011); *In re Taira Lynn Marine Ltd. No. 5, LLC,* 444 F.3d 371, 377 (5th Cir. 2006); *Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC,* 251 F.3d 1069, 1071 (5th Cir. 2001); *IMTT-Gretna v. Robert E. Lee SS,* 993 F.2d 1193, 1194 (5th Cir. 1993). The key consideration is the character of the Parish's interest in the properties and whether those properties sustained any physical damage. *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F.Supp. 1008, 1014 (E.D. La. 1993).

### c. Proprietary Interest & Accompanying Harm

The Parish concedes that, as a matter of law, the Parish cannot recover economic losses if its property has not been damaged; however, argues that it may recover for economic losses arising from damage to Parish-owned property caused by Lafarge. The Parish contends that Lafarge caused the Parish to suffer damages to "a great quantity and number of parcels of immovable

8

property, improvements and other assets and infrastructure" owned by the Parish.[7]

Indeed, the original Petition claims the Parish suffered damages to the foregoing property, and, in addition:

> physical loss and damage to infrastructure such as water and sewerage systems, streets and paves surfaces, vegetation and parks; physical loss and damage to real property and buildings owned by St. Bernard Parish; loss of and damage to Parish-owned vehicles; loss of and damage to Parish-owned equipment, supplies and material; loss and damage to Parish-owned and/or operated public utilities; and loss and damage to Parish-owned and/or operated health care systems and facilities...[8]

However, the Petition also seeks recovery for "impairment and/or loss of tax base(s) and consequent loss of tax revenue."[9] The Parish characterizes the claim as follows: "the property damage, in turn, disabled the Parish from providing governmental services and protection, leaving its absent population no choice but to delay its return and the resumption of tax-revenue generating commerce and residency."[10] The Parish clarifies: "the Parish is not seeking to recover damages to its 'tax-base consist[ing] of the value of property owned by third parties'...."[11] "Rather, the Parish is seeking to recover its

---

[7] Rec. Doc. No. 145 at 3 (quoting Rec. Doc. No. 1-1 at 14).
[8] Rec. Doc. No. 1-1 at 14.
[9] Rec. Doc. No. 1-1 at 14.
[10] Rec. Doc. No. 145 at 3.
[11] Rec. Doc. No. 145 at 5.

9

loss of revenue attributed to the damage to the Parish's buildings and property caused by Defendant."[12]

When a plaintiff does incur damage to its property, as is the case here, recovery for economic losses is allowed. *Catalyst Old River Hyrdroelectric Ltd.*, 639 F.3d at 211. In *Vicksburg Towing Co.*, the owner of a dock damaged by defendant's negligence was allowed recover for economic losses that it suffered when the defendant damaged its dock. 609 F.2d 176. "[T]he distinction between recovery by an owner when his property was damaged and recovery by other, as applied in Robins, *Dick Meyers*, and *M/V BAYOU LANCOMBE*, was 'meaningful, real and dispositive.'" *TESTBANK*, 752 F.2d at 1024 (citing Vicksburg, 609 F.2d at 177).

As stated in Judge Garwood's concurrence in *TESTBANK*, "physical harm to or invasion of a proprietary interest is generally an appropriate condition for recovery of negligently caused economic loss." *Id*. at 1035. Thus, the Parish may properly seek to recover economic losses for damage to Parish property.

The issue is whether the Parish may be entitled to recover lost tax revenue flowing from damage to Parish property, flooding, and concomitant absence of residents. Lafarge relies

---

[12] Rec. Doc. No. 145 at 5.

upon *Corpus Christi*, 71 F.3d 198, 202 (5th Cir. 1995). In that case, a vessel collided with a maritime platform. *Id.* at 199. The collision caused damage to a riser that was connected to the platform. *Id.* at 200. The riser owner directed the platform owner to shut in its wells so that it could inspect the riser and replace the damaged section. *Id.* The platform owner followed those directions, and also flared gas to prevent a loss of its wells. *Id.* The riser was inaccessible during the two weeks it was in repair. *Id.* With no access to the riser, the platform owner was not able to produce and sell its gas. *Id.* at 202. The platform owner sought to recover not only damages for the loss of the flared gas, but also for damages resulting from its inability to use the riser while the riser was being repaired. *Id.* at 202-03.

While the *Corpus Christi* court ruled that the flaring of the gas constituted damage to the platform owner's proprietary interest, the court did not permit the platform owner to recover pecuniary damages flowing from its inability to use the riser for two weeks. This case is distinguishable on the basis that in *Corpus Christi*, damage was sustained by the third-party riser, and the platform owner sought to recover for damages resulting from its inability to use the riser while it was being repaired. In *Corpus Christi*, the court stated:

> [The platform owner's] claimed economic loss was not 'attendant' to the physical damage to [the platform owner's] proprietary interest, the loss was instead occasioned only by the physical injury to [the] riser, property in which [the platform owner] had no proprietary interest....

71 F.3d at 203.

Here, the Parish claims physical damage to its own property and seeks to recover for economic losses attendant to that physical damage. The allision is claimed to have caused damage to Parish property and a disruption in Parish services, and therefore qualifies as physical damage for purposes of *TESTBANK*. *See In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 380 (5th Cir. 2006). Yet, to the extent the Parish seeks to recover for a reduction in tax base, tax generating commerce and revenue through third party business owners and residents, *Corpus Christi* controls, and that economic loss is not attendant to physical damage to property owned by the Parish.

Even if this Court concluded otherwise, "simply meeting the requirement of showing physical damage to a proprietary interest does not automatically open the door to all foreseeable economic consequences." *Corpus Christi,* 71 F.3d at 203. Further, in *Consolidated Aluminum Corp. v. C.F. Bean Corp. (Consolidated II)*, 833 F.2d 65, 68 (5th Cir. 1987), the Fifth Circuit stated:

12

> We perceive a harm to be the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.

The losses resulting from delay in resumption of tax revenue generating commerce and residency claimed here, simply was not a foreseeable result of the barge breaking free from Defendant's facility. In order to foresee such a result, Lafarge would have had to have anticipated that the negligent mooring of the barge would probably cause the barge to allide and breach the Canal, contributing to the flooding of the Parish, that such flooding would be substantial, that Parish residents would be forced to flee for an extended period of time, and the Parish would consequently be deprived of substantial tax revenue. The Court concludes that damages alleged by the Parish are too attenuated and distant from the alleged negligence of the Defendant to state a plausible claim of foreseeability, as required for proximate cause, and thus, granting Plaintiff's request for leave to re-plead would be futile. *See In re Deepwater Horizon*, 500 Fed. App'x 355 (5th Cir. 2012)(affirming district court's grant of judgment on pleadings where plaintiff failed to plausibly allege foreseeability of injuries from oil spill).

**III. CONCLUSION**

Accordingly, and for the reasons enumerated above,

**IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings is **GRANTED** and Plaintiff's claim for "impairment and/or loss of tax base(s) and consequent loss of tax revenue" is hereby **DISMISSED** with prejudice.

New Orleans, Louisiana, this 14th day of September, 2015.

_____
UNITED STATES DISTRICT JUDGE