**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ST. BERNARD PARISH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | No. 2:11-cv-02350-ILRL-JCW |
| | * | |
| LAFARGE NORTH AMERICA INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

**DEFENDANT LAFARGE NORTH AMERICA INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO COMPEL ADMISSIONS</u>**

# TABLE OF CONTENTS

**Page**

STATEMENT ......................................................................................................1

    1.    The Lawsuits, Tolling Agreement, and Prior Trial ...............................1

    2.    The Instant Lawsuit and Discovery Issue ...........................................3

ARGUMENT ......................................................................................................4

I.    THERE IS NO BASIS IN THE RULES TO SEEK TO COMPEL AN OPPOSING PARTY TO CHANGE A DENIAL TO AN ADMISSION. ..................................................4

II.    COLLATERAL ESTOPPEL DOES NOT APPLY HERE FOR THREE SEPARATE REASONS. ........................................................................6

    A.    Collateral Estoppel Does Not Apply Because LNA Prevailed in the Prior Case. ..............7

    B.    Collateral Estoppel Also Does Not Apply Because the Parish Could Have Participated in the Prior Trial. ...............10

    C.    Collateral Estoppel Also Does Not Apply Because The Parish (and LNA) Agreed to Forego Collateral Estoppel Based on the Prior Record. ..................11

III.    THE PARISH'S RULE 11 ARGUMENT IS ALSO WRONG. ...........................12

    A.    Rule 11 Expressly Does Not Apply to Discovery Responses. ..........................12

    B.    In Any Event, LNA's Denials of the Disputed Requests Are Well Supported. ...............12

IV.    PURSUANT TO RULE 37(a)(5)(B), THE PARISH SHOULD BE ORDERED TO REIMBURSE LNA FOR ITS COSTS IN OPPOSING THE MOTION. .............................14

CONCLUSION ....................................................................................................15

## TABLE OF AUTHORITIES

**CASES:**                                                                                          **Page**

*Am. Gen. Life Ins. Co. v. Hannah*,
  No. 12-cv-00087, 2014 WL 1413540 (N.D. Miss. Apr. 11, 2014)............................................9

*Bobby v. Bies*,
  556 U.S. 825 (2009)...........................................................................................................8, 9

*Cabrera v. Gov't Emps. Ins. Co. O*,
  2014 U.S. Dist. LEXIS 90810 (S.D. Fla. July 3, 2014)......................................................6

*Cox Operating, L.L.C. v. Cibilic*,
  2010 U.S. Dist. LEXIS 100010 (E.D. La. Sept. 8, 2010) .....................................................12

*Dowdy v. Coleman Co.*,
  2012 U.S. Dist. LEXIS 160536 (D. Utah Nov. 7, 2012) .........................................................6

*Falcon v. Transportes Aeros de Coahuila, S.A.*,
  169 F.3d 309 (5th Cir. 1999) ...............................................................................................7

*Foretich v. Chung*,
  151 F.R.D. 3 (D.D.C. 1993)..................................................................................................5

*Hauser v. Krupp Steel Products, Inc.*,
  761 F.2d 204 (5th Cir. 1985) ...............................................................................................10

*Hicks v. Quaker Oats Co.*,
  662 F.2d 1158 (5th Cir. 1981) ..............................................................................................9

*Kariuki v. Tarango*,
  709 F.3d 495 (5th Cir. 2013) ...............................................................................................7

*In re Katrina Canal Breaches Consol. Litig.*,
  No. 05-cv-4182, 2007 WL 1959193 (E.D. La. June 27, 2007) ............................................6

*Lakehead Pipe Line Co. v. Am. Home Assurance Co.*,
  177 F.R.D. 454 (D. Minn. 1997)..........................................................................................5

*Lang v. DirectTV, Inc.*,
  No. 10-cv-1085, 2011 WL 446288 (E.D. La. Feb. 3, 2011)..................................................5

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979)..............................................................................................................10

*Sky Technologies LLC v. IBM, Inc.*,
  2006 U.S. Dist. LEXIS 100667 (E.D. Tex. Feb. 13, 2006) .............................................4, 5, 6

*Sport Supply Group, Inc. v. Columbia Cas. Co.*,
  335 F.3d 453 (5th Cir. 2003) ...................................................................7

*United States v. Estate of Hage*,
  810 F.3d 712 (9th Cir. 2016) .................................................................8

*United States v. Cheung Kin Ping*,
  555 F.2d 1069 (2d Cir. 1977).................................................................8

*United States v. New Orleans Chapter, Associated Gen. Contractors of Am., Inc.*,
  41 F.R.D. 33 (E.D. La. 1966)..................................................................5

*United States v. Operation Rescue Nat'l*,
  111 F. Supp. 2d 948 (S.D. Ohio 1999) ...................................................6

*Winters v. Diamond Shamrock Chem. Co.*,
  149 F.3d 387 (5th Cir. 1998) ................................................................10

*XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*,
  2014 U.S. Dist. LEXIS 70365 (E.D. La. May 22, 2014) .........................14

## Rules

Fed. R. Civ. P. 37(a)(5)(B) .........................................................................1, 14

Fed. R. Civ. P. 11(d) .......................................................................................12

## Other Authorities

18 Wright, Miller & Cooper, Federal Practice and Procedure § 4421 (2d ed.
  2002) ....................................................................................................8

8B Wright, Miller & Marcus, Federal Practice and Procedure § 2263 (3d ed.
  2010) ....................................................................................................4

St. Bernard Parish's Motion to Compel Admissions (ECF No. 207) asks the Court to order Lafarge North America Inc. ("LNA") to change its denials of certain of the Parish's Requests for Admissions ("Requests") to admissions, based on collateral estoppel or Rule 11. The Motion is utterly unfounded for three separate reasons. First, there is no basis in the rules to compel a party to change a denial to an admission. Second, LNA cannot be collaterally estopped because LNA *won* the prior trial, among other reasons. And third, Rule 11 expressly does not apply to discovery responses. The Motion to Compel should therefore be denied and, pursuant to Fed. R. Civ. P. 37(a)(5)(B), the Parish should be ordered to pay LNA its attorney's fees and expenses incurred in opposing the Motion.

## STATEMENT

### 1.        The Lawsuits, Tolling Agreement, and Prior Trial

Hurricane Katrina hit Louisiana on August 29, 2005. On October 17, 2005, the Parish filed a lawsuit in the U.S. Court of Federal Claims asserting that actions (or inactions) by the U.S. Army Corps of Engineers with respect to the Mississippi River-Gulf Outlet ("MRGO") had caused the flooding that took place within the parish during the hurricane. Case No. 05-1119 (Fed. Cl.). A number of other entities filed lawsuits against the United States in this Court as well, and this Court established an umbrella litigation known as *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182.

In addition to those cases, lawsuits were filed against LNA alleging that the Inner Harbor Navigation Canal ("IHNC") floodwall had been breached by a barge that had been moored at an LNA facility. This Court created a "BARGE" category within the *Katrina* umbrella litigation that encompassed those lawsuits. By September of 2008, the Parish retained a law firm "to represent St. Bernard Parish in the claims against Lafarge North America," and that law firm (Wiedemann & Wiedemann) was already representing other plaintiffs who had already sued

1

LNA.[1]  In early 2010, LNA entered into a Tolling Agreement with a number of actual or

potential plaintiffs (including the Parish).  The Tolling Agreement expressly provided:

> In the event of future litigation involving claims by [covered persons, including
> the Parish], the Parties agree that the discovery record in the test cases will be part
> of the record for the purpose of avoiding discovery that is cumulative or
> duplicative.  This does not constitute or give rise to any waiver of rights to
> challenge evidence from the discovery record of the test cases.  **Furthermore,
> this is not an agreement to permit res judicata or estoppel, or law of the case
> to result from evidence from the discovery record of the test cases.**

Katrina Litig. Tolling Agreement at 2, attached as Ex. I to Notice of Removal (Sept. 20, 2011),

ECF No. 1-22 (emphasis added), and also attached as Exhibit B hereto.  As Judge Duval has

explained, "St. Bernard became a participating entity with respect to the Tolling Agreement on

March 4, 2010 and a substantial beneficiary of its tolling procedures since its cause of action,

without the tolling provisions, would have meant this case would have been prescribed when it

was filed."  Order at 3, ECF No. 100.

Despite having retained counsel in September of 2008 to pursue its claims against LNA,

the Parish elected not to file suit prior to the exemplar non-jury trial that Judge Duval conducted

starting on June 21, 2010.  That trial instead covered the claims asserted against LNA in four

separate lawsuits involving "numerous . . . plaintiffs"[2] – including plaintiffs represented by the

Wiedemann law firm.[3]  Following that trial, Judge Duval issued judgment in favor of LNA

"dismissing Plaintiffs' claims in their entirety."  Findings of Fact and Conclusions of Law, *In re

Katrina Canal Breaches Consol. Litig.*, No. 05-4182, ECF No. 20149, at 42 (E.D. La. Jan. 20,

---

[1] Deposition of David Paysse, Exhibit A hereto, at 21:6-9.

[2] Order and Reasons at 4 n.1, *In re Katrina Canal Breaches Consol. Litig.*, No. 05-8142, ECF
No. 32 (E.D. La. Mar. 30, 2012).

[3] *See, e.g.*, Barge Pls.' Final Witness List at 21–22, *In re Katrina Canal Breaches Consol. Litig.*,
No. 05-4182, ECF No. 18390 (E.D. La. Apr. 1, 2009) (listing Wiedemann & Wiedemann among
counsel to plaintiffs on the Barge Plaintiffs' Final Witness List).

2011).  In particular, Judge Duval held that "there is overwhelming evidence that the [Barge] did not cause in any manner cataclysmic flooding of the Lower Ninth Ward."  *Id*. at 41.  Although Judge Duval's post-trial order contained a number of so-called Findings of Fact relating to the mooring of the Barge, those findings were not in any way necessary to his judgment in favor of LNA – that is, they were pure dicta – and indeed all of Judge Duval's Conclusions of Law related to the issue of causation, not to the mooring of the Barge (or the issues of negligence or due care).  *Id*. at 36-41.

On February 12, 2011, plaintiffs from the first trial filed a notice of appeal to the Fifth Circuit.  Before filing their opening brief, however, they dismissed the appeal.  *See* Order, *In re Katrina Canal Breaches Litig.*, No. 11-30199, ECF No. 511529673 (5th Cir. July 5, 2011).  As a result, LNA never had an opportunity, need, or incentive to obtain appellate review of any statements in the post-trial decision that, while dicta that were not necessary to the judgment, were contrary to LNA's position.

### 2.   The Instant Lawsuit and Discovery Issue

On August 23, 2011, just after the plaintiffs from the first case dismissed their appeal, the Parish – represented by the Wiedemann law firm that the Parish had retained in 2008 to assert its claims against LNA, as well as other counsel – filed a new lawsuit against LNA in the 34th Civil District Court for the Parish of St. Barnard.  *See* Petition for Damages, ECF No. 1-1.  LNA removed the case to this Court (*see* Notice of Removal, ECF No. 1 (Sept. 20, 2011)), and this Court denied the Parish's motion to remand the case back to state court, finding that the Parish had improperly joined three LNA employees in an effort to defeat federal court jurisdiction (*see* Order and Reasons, ECF No. 60 (Apr. 25, 2012)).

In October 2015, the Parish served 138 Requests for Admissions on LNA, and LNA timely responded to all of the Requests on December 3, 2015.  *See* LNA's Response to Pl.'s First

Set of Requests for Admission, attached as Ex. B to Mot. to Compel, ECF No. 207-3.  With

respect to the Requests at issue here, LNA's responses either denied each Request in its entirety

or expressly admitted certain specified facts and denied the remainder of the Request.  More

broadly, LNA admitted either all or portions of a substantial number of the 138 Requests that the

Parish served; LNA did not, in any sense, simply deny the Requests on a wholesale basis or

interpose non-substantive objections.  *See id.*

On March 31, 2016, the Parish filed the present "Motion to Compel Admissions."

## ARGUMENT

I.    **THERE IS NO BASIS IN THE RULES TO SEEK TO COMPEL AN OPPOSING PARTY TO CHANGE A DENIAL TO AN ADMISSION.**

The Motion to Compel should be denied in its entirety for a simple threshold reason:  the

Federal Rules provide no basis for moving to compel a party to change the denial of a Request

for Admission to an admission.  This point is basic hornbook law.  As Wright & Miller explain,

"the propounding party may not challenge the denial [of a request to admit] on the ground that it

is unsupported by the evidence."  8B Wright, Miller & Marcus, FEDERAL PRACTICE AND

PROCEDURE § 2263 (3d ed. 2010).

In *Sky Technologies LLC v. IBM, Inc.*, 2006 U.S. Dist. LEXIS 100667 (E.D. Tex. Feb.

13, 2006), for example, IBM moved to compel Sky "to amend its answers" to admit rather than

deny certain requests.  IBM argued "that a Court is authorized, at this stage of the proceedings, to

make a factual determination of the accuracy of a party's denial," but the court held that "the

plain text of [Rule 36] does not authorize such an order and IBM has cited no precedents in

which, on a Rule 36 motion, a court ordered a matter admitted because a party's unequivocal

denial of a request for an admission was unsupported by the evidence."  *Id.* at \*19–21.  Because

Sky had denied (rather than merely objected to) the requests, the court held that "[r]egardless of

4

their accuracy, [Sky's] responses are appropriate under Rule 36 and the Federal Rules do not allow IBM to litigate, at this time, whether [Sky] was justified in denying its request." *Id*. at *22. The court further held that "'[t]he right to challenge the 'sufficiency' of a response is not the equivalent of the right to challenge the veracity of a denial.' . . . There is simply no provision of the Rule allowing a party to litigate a denied request for an admission at this stage of the proceedings." *Id*. at *22 (quoting *Foretich v. Chung*, 151 F.R.D. 3, 5 (D.D.C. 1993)). Finally, the court observed that "Rule 37(c) provides that a party who refuses to admit a certain matter in response to a Rule 36 request can, under certain circumstances, be held liable for expenses incurred by the opposing party in proving that particular matter at trial . . . . That is where these matters are more properly addressed and, if possible, resolved." *Id*. at *23 (citations omitted).

Likewise, in *Lang v. DirectTV, Inc.*, No. 10-cv-1085, 2011 WL 446288, at *2 (E.D. La. Feb. 3, 2011) (Shushan, J.), the plaintiffs filed a "motion to compel" arguing that the defendant "denied two requests for admission when they should be admitted." The court denied the motion, holding that the defendant "is not required to supplement its response. If the plaintiffs later prove the matters true, they may move that [the defendant] pay the reasonable expenses, including attorneys' fees, incurred in making that proof." *Id.* Numerous other cases have also held that the Federal Rules provide no basis for a party to seek to compel another party, who has denied a request, to admit that request based on the alleged evidence.[4]

---

[4] *See, e.g.*, *United States v. New Orleans Chapter, Associated Gen. Contractors of Am., Inc.*, 41 F.R.D. 33, 34 (E.D. La. 1966) (court's role under Rule 36 "is to interpret and determine the sufficiency of the defendant's responses, rather than to attempt by order to coerce what the court might determine to be proper responses." (quotation marks and citation omitted)); *Foretich*, 151 F.R.D. at 5; *Lakehead Pipe Line Co. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("Rule 36(a) does not authorize a Court to prospectively render determines concerning the accuracy of a denial to a Request for Admission, or to order that the subject matter of the request be admitted because the opposing party's unequivocal denial is asserted to be unsupported by the evidence"); *Cabrera v. Gov't Emps. Ins. Co.*, 2014 U.S. Dist. LEXIS

That threshold legal principle requires the Court to deny the Parish's Motion to Compel in its entirety.  The Parish admits that LNA substantively denied the Requests at issue.  *See* Mot. to Compel at 2 ("LNA insists on denying" the Requests), 10 (citing "LNA's denials"), 23 (arguing "LNA's denials of the Parish's RFAs are improper").[5]  And it is well settled that an unqualified denial is a proper and sufficient response to a request to admit.[6]  As such, "there is simply no provision of the Federal Rules allowing [the Parish] to litigate a denied request for an admission at this stage of the proceedings."  *Sky Technologies*, 2006 U.S. Dist. LEXIS 100667, at *22.  The Motion to Compel should be denied in its entirety for this threshold reason.

## II.   COLLATERAL ESTOPPEL DOES NOT APPLY HERE FOR THREE SEPARATE REASONS.

Even if the Rules provided authority to compel a party that has denied a Request to instead admit it based on the record – which they do not – the Parish is wrong as a matter of law to assert that LNA is collaterally estopped from denying the Requests based on certain of Judge

---

90810, *52 (S.D. Fla. July 3, 2014) ("As long as a responding party's answer is adequate to satisfy the technical requirements of Rule 36, the court is not empowered to compel [Defendants] to change an answer to conform to the 'truth' or to any particular theory or other evidence") (*quoting Collins v. JC Penney Life Ins. Co.*, 2003 U.S. Dist. LEXIS 8455, *32 (S.D. Cal. May 6, 2003)); *Dowdy v. Coleman Co.*, 2012 U.S. Dist. LEXIS 160536, *4 (D. Utah Nov. 7, 2012) ("Rule 36(a) does not authorize a court to make a factual determination about the accuracy of a denial or permit a court to establish facts where the responding party has provided a complete response to the request for admission"); *United States v. Operation Rescue Nat'l*, 111 F. Supp. 2d 948, 968 (S.D. Ohio 1999) ("A party may not seek a pre-trial determination of the accuracy of an opponent's denial of a request for admission, merely because evidence does not support that denial.").

[5] This is confirmed by the responses themselves.  *See, e.g.*, Doc. 207-3, Response to Request Nos. 67 ("Denied."), 70 ("Denied."), 71 ("Denied."), 73 (admitting and denying certain specific facts).

[6] *See, e.g.*, *In re Katrina Canal Breaches Consol. Litig.*, No. 05-cv-4182, 2007 WL 1959193, at *3 (E.D. La. June 27, 2007) (Wilkinson, J.) ("Rule 36 requires either an admission or a specific denial, ***without*** any explanation, *or* an explanation why the answering party cannot admit or deny the matter or can in good faith qualify an answer or deny only a part of the matter.  Because the United States has unqualifiedly denied each of these Requests for Admissions, its responses to Request for Admissions Nos. 26 through 49 are sufficient.") (emphasis in original).

Duval's post-trial factual findings.  The Fifth Circuit has identified the requirements for applying

collateral estoppel as follows:

> We have stated that collateral estoppel is appropriate only when the following four conditions are met.  First, the issue in the subsequent action must be identical to the issue litigated in the prior action.  Second, the issue must have been fully and vigorously litigated in the prior action.  Third, the issue must have been necessary to support the judgment in the previous case.  Fourth, there must be no special circumstances that would render preclusion inappropriate or unfair.

*Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 n.4 (5th Cir. 2003); *accord*

*Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013).  These requirements are not met here for

three independent reasons.

### A. Collateral Estoppel Does Not Apply Because LNA Prevailed in the Prior Case.

Because the requirements for collateral estoppel include that "the issue must have been

necessary to support the judgment in the previous case," it is a bedrock principle that collateral

estoppel cannot be applied against the party that ***won*** the earlier case, since any rulings adverse

to the prevailing party by definition were not necessary to support the prior judgment.  In *Sport

Supply*, plaintiff Sport Supply argued that defendant Columbia was collaterally estopped by a

ruling in a prior case that a particular insurance policy exclusion did not apply, even though

Columbia had won that prior case.  335 F.3d at 458 n.4.  The Fifth Circuit held "Sport Supply

cannot satisfy the third element" – that is, that the issue was necessary to support the prior

judgment – and that "collateral estoppel does not apply."  *Id*.  And the Fifth Circuit explained

that this was because the prior "ultimate decision did not depend upon the [] determinations"

adverse to Columbia, and hence those prior determinations "were thus not necessary to support

[the court's] judgments."  *Id*.  Similarly, in *Falcon v. Transportes Aeros de Coahuila*, S.A., 169

F.3d 309, 312 (5th Cir. 1999), the Fifth Circuit held that a finding of personal jurisdiction

adverse to the defendant in a prior case could not be given collateral estoppel effect because the

prior action had ultimately been dismissed, meaning that the adverse personal jurisdiction

finding was not "'necessary to the outcome' of the litigation." This rule likewise is basic

hornbook law. *See* 18 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 4421, at

551 (2d ed. 2002) ("Application of the necessity principle is most clearly illustrated by findings

that are contrary to the judgment in the sense that, standing alone, they would conduce to an

opposite judgment."). Numerous other cases have likewise articulated and implemented this

fundamental rule.[7]

The United States Supreme Court itself adopted and applied this controlling rule in

*Bobby v. Bies*, 556 U.S. 825 (2009). In that case, at the initial criminal trial, the court had held

that Bies was "mildly mentally retarded" but nevertheless sentenced him to death, and that ruling

was affirmed. *Id.* at 830. Bies then filed a petition for habeas corpus, and the Sixth Circuit held

the state was collaterally estopped by the finding that Bies was mentally retarded. *Id.* at 831.

The Supreme Court reversed the collateral estoppel ruling, holding that

> the courts' statements [during the first case] regarding Bies' mental capacity were
> not necessary to the judgments affirming his death sentence. A determination
> ranks as necessary or essential only when the final outcome hinges on it. Far
> from being necessary to the judgment, the Ohio courts' mental-retardation
> findings cut against it—making them quintessentially the kinds of rulings not
> eligible for issue preclusion treatment.

*Id.* at 835 (citations omitted). For the same reason, any findings from the first Barge trial that

"cut against" the judgment entered for LNA are "quintessentially the kinds of rulings not eligible

for issue preclusion treatment."

---

[7] *See, e.g.*, *United States v. Estate of Hage*, 810 F.3d 712, 719 (9th Cir. 2016) ("A determination
adverse to the prevailing party is not given preclusive effect.") (citation omitted); *United States
v. Cheung Kin Ping*, 555 F.2d 1069, 1076 (2d Cir. 1977) (defendant was "entitled to invoke the
general rule that determinations adverse to the winning party do not have preclusive effect");
*Bies*, 556 U.S. at 835 ("findings [that] cut against" the ultimate determination are "quintessen-
tially the kinds of rulings not eligible for issue-preclusion treatment").

The Parish's efforts to distinguish *Bies* are specious. The Parish argues (at 16) that the Court in *Bies* rejected collateral estoppel because it was unclear whether the mental retardation issue had been actually decided in the first case, but in fact the Supreme Court, although noting that question, said that a "[m]ore fundamental" basis for reversal was that the ruling on retardation was not necessary to the prior judgment. *Id*. at 835. The Parish also argues that the estoppel ruling in *Bies* actually turned on a change in the law, but the Supreme Court expressly made that an additional basis for its decision. *Id*. at 836 ("even if the core requirements for issue preclusion had been met, an exception … would be warranted due to this Court's intervening decision"). Finally, the Parish argues that *Bies* turned on the criminal nature of the earlier case, but *Bies* has been applied in civil cases[8] and, as already shown, numerous civil cases have articulated the same fundamental principle of collateral estoppel law. In short, *Bies* is both on-point and amply supported by controlling Fifth Circuit caselaw.

Applying the fundamental principle that subsidiary findings cannot estop the party that won the judgment in the earlier case, it is clear that any factual findings by Judge Duval cannot be given collateral estoppel effect against LNA ***because LNA won that case***. In particular, as set forth above, Judge Duval held that the Barge did not cause the floodwall breaches and ***entered final judgment in favor of LNA dismissing plaintiffs' claims in their entirety***. *See* page 2 *supra*. Because LNA therefore was the prevailing party, any factual findings adverse to LNA were mere dicta and cannot be given collateral estoppel effect under controlling authority.[9]

---

[8] *See, e.g.*, *Am. Gen. Life Ins. Co. v. Hannah*, No. 12-cv-00087, 2014 WL 1413540, at *1 (N.D. Miss. Apr. 11, 2014).

[9] One of the reasons for the rule that collateral estoppel cannot be applied against a party who prevailed in the prior action is that such a party lacks standing to appeal and therefore likely had no opportunity and no incentive to obtain appellate review of any adverse rulings rendered during the case. *See, e.g.*, *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. 1981). Here, the plaintiffs to the prior case dismissed their appeal prior to filing their appellate brief, and

### B. Collateral Estoppel Also Does Not Apply Because the Parish Could Have Participated in the Prior Trial.

The Supreme Court has held that "[t]he general rule should be that in cases where a plaintiff could easily have joined in the earlier action …, a trial judge should not allow the use of offensive collateral estoppel." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979). The Fifth Circuit has repeatedly recognized this rule as well. In *Hauser v. Krupp Steel Products, Inc.*, 761 F.2d 204 (5th Cir. 1985), for example, the plaintiff sought to invoke collateral estoppel based on findings in "an earlier and separate action" against the same defendant (which had lost that earlier case). Citing the rule from *Parklane Hosiery* quoted just above, the Fifth Circuit held that the plaintiff could not invoke collateral estoppel because "there was no reason that [the plaintiff] could not have joined [the] earlier action." *See also, e.g.*, *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998) (collateral estoppel is inappropriate if "the plaintiff easily could have joined the previous action, but instead chose to 'wait and see' whether a favorable judgment would be rendered").

This rule also bars the Parish from using collateral estoppel, because the Parish could have joined as a plaintiff in the prior trial before Judge Duval. The Parish retained the Wiedemann law firm in or around September of 2008 "to represent St. Bernard Parish in the claims against Lafarge North America," and that law firm was already representing the plaintiffs in the other cases who subsequently became parties to the first Barge trial before Judge Duval.[10] That trial, moreover, was not held until June of 2010 – almost five years after the hurricane passed, and two years after the Parish retained counsel to pursue claims against LNA. Thus, the Parish easily could have joined as one of the many plaintiffs in that first trial.

---

hence LNA, because it had won the case, had no opportunity, need, or incentive to obtain appellate review of any adverse factual findings in the decision. *See* page 3 *supra*.

[10] *See* page 1 *supra*; Deposition of David Paysse, Exhibit A hereto, at 21:6-9.

Under these circumstances, it necessarily follows, under *Parklane Hosiery* and the Fifth Circuit cases quoted above, that the Parish cannot utilize collateral estoppel here.  If the Parish had joined the first trial, final judgment in LNA's favor would have been entered against all of the Parish's claims, as it was against all the other plaintiffs.  The Parish elected not to participate in that trial, and hence the rulings in LNA's favor in that trial do not bind the Parish.  But it equally follows, as a matter of fundamental fairness, that the Parish cannot use the findings from that trial that were adverse to LNA to bind LNA in this case.

### C.   Collateral Estoppel Also Does Not Apply Because The Parish (and LNA) Agreed to Forego Collateral Estoppel Based on the Prior Record.

Finally, the Parish cannot invoke collateral estoppel based on the rulings from the prior trial because the Parish and LNA agreed, as part of their tolling agreement, that the record from the prior trial would not constitute collateral estoppel in this case.  Specifically, as quoted above, the Parish and LNA "agree[d] that the discovery record in the test cases will be part of the record for the purpose of avoiding discovery that is cumulative or duplicative" but also expressly agreed that "this is not an agreement to permit res judicata or estoppel, or law of the case to result from evidence from the discovery record of the test cases."  That agreement further forecloses the Parish's current motion to compel.

The Parish's effort to renege on its agreement that collateral estoppel would not be permitted on the basis of the test case record is particularly egregious.  Judge Duval found that "St. Bernard became . . . a substantial beneficiary of [the Tolling Agreement] since its cause of action, without the tolling provisions, would have meant this case would have been prescribed when it was filed."  *See* page 2 *supra*.  Given that the Parish's case would be time-barred without the Tolling Agreement, the Parish's effort to evade the commitments it made as part of that same agreement is especially inappropriate.  Even beyond that, the Parish's attempt to reap the benefits

of the portions of Judge Duval's decision that supposedly benefit the Parish, while relitigating the portions of that same decision that would foreclose its claims, is fundamentally unfair. Both the Parish and LNA agreed to forego using collateral estoppel based on the first trial, and that agreement is binding on both parties, not just LNA.[11]

## III. THE PARISH'S RULE 11 ARGUMENT IS ALSO WRONG.

### A. Rule 11 Expressly Does Not Apply to Discovery Responses.

As a dispositive, threshold matter, Rule 11(d) provides, clear as day, that Rule 11 does not even apply to discovery responses:

> Inapplicability to Discovery. This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.

Fed. R. Civ. P. 11(d). Numerous courts, including this one, have recognized and enforced that provision. *See, e.g.*, *Cox Operating, L.L.C. v. Cibilic*, 2010 U.S. Dist. LEXIS 100010, at *4–5 (E.D. La. Sept. 8, 2010) (Wilkinson, J.) ("I note initially that Rule 11 'does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.' Fed. R. Civ. P. 11(d). Thus, the motion is denied insofar as it requests Rule 11 sanctions for plaintiff's alleged discovery misconduct.").

On its face, therefore, the Parish's argument that LNA's responses to the Requests violated Rule 11 is legally frivolous, requiring denial of the Motion to Compel.

### B. In Any Event, LNA's Denials of the Disputed Requests Are Well Supported.

As shown above, a party that denies a Request for Admission is not required to explain that denial. *See* page 4 *supra*. As such, the Parish should not be permitted to file a so-called

---

[11] The Parish's argument (at 11) that applying collateral estoppel here would "promote the interests of judicial economy" fails not only because many of the requirements for collateral estoppel are not met, but also because if collateral estoppel were to be applied contrary to the rules, judicial economy would be far better served by applying collateral estoppel against the Parish, which could have joined the first trial but did not and which is asserting a claim that Judge Duval found to be entirely meritless in his post-trial ruling.

"Motion to Compel" as a surreptitious way to try to obtain such explanations from LNA.  And this is even more true because, as shown above, the Parish's Motion to Compel is legally baseless in so many fundamental respects.

Nevertheless, even a few examples show that LNA's denials are amply supported.  For example, the Parish argues (at 21) that LNA should have admitted that Mr. Busch instructed workers to run lines between two barges, but in fact Mr. Busch testified that he asked workers to run "long lines" from the barges to the dock.  Trial Tr. at 59-60, *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182 (June 21, 2010), attached as Exhibit C hereto.  The Parish argues (at 22) that LNA should have admitted that an employee "did not put lines on all five cleats securing" the Barge, but there was testimony at the trial that the Barge was tied at every cleat. *Id.* at 62, 81.  The Parish says (at 22) that LNA should have admitted that a "single part usage" of line between two barges "was a temporary mooring," but there was trial testimony expressly disagreeing with that characterization.  *Id.* at 2893.  And the Parish says (at 4) that LNA should have admitted that Advisory 12 "placed New Orleans within the potential strike zone" at the time of the advisory, but that is not factually correct.[12]

In short, not only is Rule 11 inapplicable here, but LNA's responses are amply supported.  Indeed, as shown above, LNA did not sweepingly deny the Requests, but instead properly admitted a substantial number in whole or in part to the extent warranted by the facts.  The Motion to Compel is meritless for all of these additional reasons.

---

[12] Moreover, Exhibit C to the Parish's Motion to Compel shows that the Parish's assertion that LNA should have admitted these Requests is not based on the record evidence, but rather on the Parish's characterization of certain of the post-trial findings.  Specifically, the Parish does not cite in Exhibit C to actual record evidence, but only to certain of Judge Duval's findings.  As such, this "Rule 11" argument actually is just another variant of the Parish's legally erroneous assertion that LNA is collaterally estopped by those findings.

**IV.     PURSUANT TO RULE 37(A)(5)(B), THE PARISH SHOULD BE ORDERED TO REIMBURSE LNA FOR ITS COSTS IN OPPOSING THE MOTION.**

Federal Rule of Civil Procedure 37(a)(5)(B) provides that "[i]f the motion [to compel] is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."  The Court should order the Parish to pay LNA's attorney's fees and expenses incurred in opposing the Motion to Compel because the Motion to Compel plainly was not "substantially justified" and no other circumstances make such an award unjust.[13]

First, there can be no genuine question that the Motion to Compel was not substantially justified, since (1) it is entirely foreclosed by the long-standing principle that the rules do not permit a party to seek to compel a party that has denied a Request to admit the Request based on the alleged evidence, (2) the Parish's collateral estoppel arguments are foreclosed by controlling authority that is not even mentioned in the Motion,[14] and (3) the Parish's Rule 11 argument is foreclosed by the Rule's own statement that it does not apply to discovery responses.  Moreover, while the Parish's wholesale disregard of legal authority is bad enough, it stretches the imagination to think that the Parish should not be held accountable for attempting to breach the obligations it expressly undertook in the parties' Tolling Agreement.

Moreover, this is a situation where it would be unjust ***not*** to award fees to LNA.  The Parish filed a 23-page Motion to Compel, with a 29-page declaration and hundreds of pages of

---

[13] *See, e.g.*, *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 2014 U.S. Dist. LEXIS 70365 (E.D. La. May 22, 2014) (order of Vance, J., affirming Rule 37(a)(5)(B) order of Wilkinson, J., awarding attorneys' fees incurred in connection opposition to motion to compel).

[14] Moreover, the Motion to Compel does not cite even a single case supporting the theory that collateral estoppel can be used to estop the party who prevailed in the prior case.

exhibits, in a lawsuit demanding enormous damages from LNA.  Even though the Motion is legally frivolous in every respect, LNA must incur the costs of establishing and presenting each of those defects to this Court.  Under the circumstances, it would be unjust to permit the Parish to impose those significant costs on LNA without the reimbursement called for by the Rule.

## **CONCLUSION**

The Motion to Compel should be denied, and the Parish should be ordered to pay LNA its attorneys' fees and expenses incurred in opposing the motion.

Dated:  April 19, 2016

/s/ Mark S. Raffman
Derek A. Walker (#13175)
CHAFFE MCCALL, L.L.P.
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
walker@chaffe.com

Mark S. Raffman (*pro hac vice*)
Adam M. Chud (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240
Facsimile:  (202) 346-4444
mraffman@goodwinprocter.com
achud@goodwinprocter.com

Daniel A. Webb (#13294)
SUTTERFIELD & WEBB, LLC
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715
Facsimile:  (504) 529-7197
dwebb@swslaw.com

***Attorneys for Lafarge North America
Inc.***

16

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will sent to those indicated as non-registered participants, if any, on April 19, 2016.


/s/ Mark S. Raffman
Mark S. Raffman